# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **B.S.-1, E.S., C.S., and S.W.**

**No. 16-1087** (Preston County 15-JA-12, 15-JA-13, 15-JA-14, and 15-JA-15)

## MEMORANDUM DECISION

Petitioner Mother T.S., by counsel Richard Gutmann, appeals the Circuit Court of Preston County's October 11, 2016, order terminating her parental and custodial rights to B.S.-1, E.S., C.S., and S.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Kristen D. Antolini, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights without imposing a less-restrictive dispositional alternative.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, the DHHR filed an abuse and neglect petition against the parents. Specifically, the petition alleged that the father had a long history of domestic violence toward

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because one of the children and a father share the same initials, we will refer to them as B.S.-1 and B.S.-2 throughout this memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

petitioner's three children who lived in the home. In fact, the petition alleged that the father was twice arrested as a result of his physical violence toward the children, including incidents in which he repeatedly struck the children in the face with various objects. As to petitioner, the DHHR alleged that she failed to protect the children from the father's abuse and posted his bond after his arrest. The petition also alleged that petitioner admitted to the illegal use of buprenorphine during her pregnancy with S.W. Lastly, the petition alleged that the home was in deplorable condition and that the parents failed to provide the children with adequate medical care.

In March of 2015, petitioner filed a written stipulation to allegations in the petition, and the circuit court adjudicated her as an abusing parent.[3] Specifically, petitioner admitted that she failed to terminate her relationship with the father following his arrests for abusing the children. Petitioner further stipulated to several conditions that she was required to address, including learning to protect the children, providing them with a safe home, and undergoing parenting and life skills services, among other issues. The circuit court also granted petitioner a post-adjudicatory improvement period. In February of 2016, the circuit court granted petitioner an improvement period as disposition in order to permit additional counseling.

In July of 2016, the circuit court held a series of dispositional hearings, during which it heard testimony from the psychologist treating the children. According to the psychologist, the children expressed fear of the father and did not want him to return to petitioner's home. Moreover, the visitation supervisor testified that the father exhibited inappropriate behavior during visits, including raising his voice at the children. This caused the supervisor concern, especially in light of unsolicited disclosures from the children regarding the father's past maltreatment. In regard to her court ordered drug screens, the circuit court also heard evidence that petitioner tested positive for marijuana and illicit buprenorphine on three occasions and failed to appear for eighteen drug screens from February of 2016 through April of 2016. Further, although she attended the required parenting and life skills services, petitioner's provider testified that petitioner did not make meaningful progress with these services and opined that she would not change her parenting habits based on the provider's observations. Additionally, one service provider testified to having seen petitioner and the father together despite their insistence that they ended their relationship. Another provider testified to concerns over an ongoing relationship between the parents, especially in light of the children's express fear of the father. As such, the circuit court found that there was no reasonable likelihood petitioner could

---

[3]In actuality, the circuit court adjudicated petitioner as a "neglecting parent." However, West Virginia Code § 49-1-201, in relevant part, defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Because the definition of "abusing parent" encompasses parents who have been adjudicated of abuse or neglect, we will use the correct statutory term throughout this memorandum decision.

substantially correct the conditions of abuse and neglect and terminated her parental and custodial rights to the children.[4] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error. On appeal, petitioner argues that the circuit court erred in failing to impose a less-restrictive dispositional alternative in light of the fact that she participated in services, acknowledged her deficient parenting, made significant progress, and established a strong bond with the children. The Court, however, does not agree.

Simply put, petitioner's argument ignores the facts of the case below. Specifically, the circuit court found that petitioner was not compliant with services and failed to remedy the conditions of abuse and neglect in the home. These findings were based on substantial evidence, including evidence of petitioner's multiple positive drug screens and failure to fully submit to

---

[4]The parental rights of S.W.'s father, C.W., and his mother, petitioner, were terminated below. The parental rights of B.S.-2, the father of B.S.-1 and E.S., and the unknown father of C.S. remain intact. Specifically, the DHHR withdrew any allegations against B.S.-2, the father of B.S.-1 and E.S., during the proceedings below, although the record does not reflect why the DHHR never returned the children to his custody. Additionally, the guardian indicates that after the dispositional hearings below, the parties discovered that C.S. had an unknown father, at which point the parties attempted to identify and locate this individual. All the children currently reside with their maternal grandparents. Because both his parents' parental rights were terminated, S.W. has no impediments to adoption. According to the guardian, as of the filing of her response brief, the permanency plan for B.S.-1, E.S., and C.S. is also adoption in that home, following (1) a potential termination of the unknown father's rights to C.S., and (2) B.S.-2, the father of B.S.-1 and E.S., consenting to that adoption. The guardian further states that the concurrent permanency plan is granting legal guardianship of B.S.-1, E.S., and C.S. to the maternal grandparents.

court ordered drug screens. Moreover, as set forth above, petitioner's service provider testified that petitioner failed to implement any of the skills she was taught in her services, despite the fact that she completed the same. Additionally, petitioner's argument regarding the bond between her and the children ignores the fact that the children feared the father and blamed petitioner for failing to protect them from him. In fact, the circuit court specifically found that B.S. was "very angry at [petitioner] for choosing [the father] over the children." Finally, petitioner ignores the fact that, contrary to her testimony about terminating her relationship with the father, the circuit court heard testimony from individuals who saw petitioner and the father together during the pendency of the proceedings below.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child .
> . . .

Based upon the substantial evidence outlined above, the circuit court found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she failed to follow through with services designed to remedy the conditions of abuse and neglect. The circuit court further found that termination of petitioner's parental and custodial rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental and custodial rights upon such findings. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error below.

This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as

4

to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 11, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker